IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CHARLES CLARENCE TIGER,           )
                                  )
              Petitioner,         )
                                  )
v.                                )          Case No. CIV-07-640-F
                                  )
MARTY SIRMONS, Warden of the      )
Oklahoma State Penitentiary,      )
                                  )
              Respondent.         )

# REPORT AND RECOMMENDATION

The Petitioner, Mr. Charles Tiger, is a state inmate who seeks an evidentiary hearing, discovery, expansion of the record, and issuance of a writ of habeas corpus.  The Court should deny the requests.

## BACKGROUND

In state court, Mr. Tiger was convicted of:

- conspiracy to commit a felony,

- second degree burglary,

- assault and battery with a deadly weapon and with intent to kill,

- two counts of first degree burglary,

- two counts of pointing a firearm at another,

- robbery with a firearm,

- attempted burglary in the first degree, and

- possession of a firearm after a former felony conviction.

*See* Petition for a Writ of Habeas Corpus at pp. 2-3 (June 5, 2007) ("Petition").  On appeal, the Oklahoma Court of Criminal Appeals ("OCCA") reversed in part with instructions to dismiss the convictions for conspiracy to commit a felony and one count of burglary in the first degree.  *Tiger v. State*, Case No. F-2004-1127, slip op. at 1-3, 5 (Okla. Crim. App. May 6, 2006) ("OCCA Opinion on Direct Appeal").  The court upheld the conviction on the remaining counts.  *Id.* at 2-5.

The present action followed.

## STANDARD FOR HABEAS RELIEF

Because the OCCA addressed the merits of the Petitioner's claims,[1] the federal district court bears a "secondary and limited" role.  *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998).

For factual issues, the habeas court determines only whether the state tribunal's findings were reasonable based on the evidence presented in the Oklahoma courts.  *See* 28 U.S.C. § 2254(d)(2) (2000).

For legal issues, habeas relief is available only if the state court's ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1) (2000).  Thus, "an absolute prerequisite for petitioner's claim is that the asserted constitutional right on which it rests derive in clear fashion from Supreme Court precedent."  *Carter v. Ward*, 347 F.3d

---

[1] *See* OCCA Opinion on Direct Appeal at pp. 3-5.

860, 863 (10th Cir. 2003) (citation omitted); *see Parker v. Scott*, 394 F.3d 1302, 1308-1309

(10th Cir. 2005) ("Even relevant precedent of this circuit cannot prevail absent clear Supreme

Court authority." (citations omitted)).

A decision is "contrary to" Supreme Court precedent only if that court had rendered

an opinion dispositive of the claim.[2]  These circumstances may exist when the state court

had:

- applied a rule that conflicted with governing Supreme Court precedents or

- reached a conclusion different from the Supreme Court on materially indistinguishable facts.

*See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) (citation omitted); *see also Bland v.*

*Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006).[3]

A similar test governs the objective reasonableness of the state court's legal rulings:

> [A] decision is "objectively unreasonable" when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law.  It is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision.  In other words, . . . the state court decision must be "at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable."

---

[2]    The Tenth Circuit Court of Appeals has quoted with approval the following principle: "'If no Supreme Court precedent is *dispositive* of a petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be contrary.'"  *Anderson v. Mullin*, 327 F.3d 1148, 1155 (10th Cir. 2003) (quoting *Vieux v. Pepe*, 184 F.3d 59, 63 (1st Cir. 1999) (emphasis in original)).

[3]    In *Bland v. Sirmons*, the Tenth Circuit Court of Appeals stated:  "It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself."  *Bland v. Sirmons*, 459 F.3d at 1009 (citation omitted).

*Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006) (citation omitted); *see also Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933, 1939 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - - a substantially higher threshold." (citation omitted)).

## ALLEGED VIOLATION OF THE
## OKLAHOMA CONSTITUTION AND STATE LAWS

In part, Mr. Tiger alleges the violation of Oklahoma statutes and the state constitution. Petition at pp. 14, 19, 22, 29. But habeas relief does not lie solely for error under state law or the state constitution.[4] Thus, the Petitioner could not obtain federal habeas relief even if his conviction had violated the Oklahoma Constitution or state laws.

## ENTITLEMENT TO A SPEEDY TRIAL
## GROUND ONE

Mr. Tiger was:

- arrested on November 9, 2001,

- formally charged on January 7, 2003, and

- tried beginning on October 18, 2004.

*See id.* at p. 10. According to the Petitioner, the delay violated his constitutional right to a speedy trial. *See id.* at pp. 13-22. On direct appeal, the OCCA disagreed. *See* OCCA

---

[4]     *See Davis v. Reynolds*, 890 F.2d 1105, 1109 n.3 (10th Cir. 1989) ("Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)." (citation omitted)); *see also Nieto v. Sullivan*, 879 F.2d 743, 749 n.10 (10th Cir. 1989) ("the assertion of violation of the State Constitution is not cognizable under 28 U.S.C. § 2254(a)" (citation omitted)).

Opinion on Direct Appeal at pp. 3-4.  This determination was reasonable under Supreme Court precedents, and the federal district court should reject the habeas claim.

I.     Standard for a Constitutional Violation

Through the Fourteenth Amendment, the Sixth Amendment entitles state prisoners to a speedy trial.  *See Jackson v. Ray*, 390 F.3d 1254, 1260 (10th Cir. 2004).

To determine whether Mr. Tiger's right to a speedy trial was violated, the Court must consider:

- the length of the delay,

- the reasons for the delay,

- the Petitioner's assertion of his right to a speedy trial, and

- any prejudice to Mr. Tiger.

*See Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Jackson v. Ray*, 390 F.3d 1254, 1260 (10th Cir. 2004).  No single factor is dispositive, and the Court can grant habeas relief only "if there is no possible balancing of the factors that both supports the OCCA's decision and is not contrary to clearly established Supreme Court precedent."  *Jackson v. Ray*, 390 F.3d at 1260-61; *see also Simms v. Bravo*, 111 Fed. Appx. 552, 554 (10th Cir. Sept. 7, 2004) (unpublished op.).[5]

---

[5]     In *Simms v. Bravo*, the Tenth Circuit Court of Appeals stated:

> The flexibility of the Supreme Court's speedy trial test creates a high hurdle for habeas petitioners claiming that a state court's speedy trial decision was unreasonable.  AEDPA only allows us to grant the petition if the state court's decision falls outside the range of reasonable applications of the *Barker* [*v. Wingo*, 407 U.S. 514 (1972)] test, and the Supreme Court made it clear in *Barker* that the

II.    The Length of the Delay

Before Mr. Tiger can prevail, he must establish the existence of a "presumptively prejudicial" delay. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). If this showing is made, the Court should consider the remaining factors. *See id.* at 652.

The threshold question is the date to apply for calculation of the length of the delay. Mr. Tiger argues that the period of delay begins with arrest. Petition at p. 18. He is correct. *See United States v. MacDonald*, 456 U.S. 1, 7 (1982) ("In addition to the period after indictment, the period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim." (citing *Dillingham v. United States*, 423 U.S. 64 (1975)).

The arrest took place on November 9, 2001, and the trial began on October 18, 2004. *See supra* p. 4. The delay is "presumptively prejudicial." *See United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (seventeen month delay was presumptively prejudicial).

III.    The Reasons for the Delay

In combination, the reasons for the delay do not weigh heavily for or against habeas relief.

In light of the presumption of prejudice, the Court must categorize and weigh the reasons for the delay. "[D]ifferent weights should be assigned to different reasons." *Barker v. Wingo*, 407 U.S. 514, 531 (1972). For example, if the state deliberately delays the trial in

---

range is very broad indeed.

*Simms v. Bravo*, 111 Fed. Appx. 552, 554 (10th Cir. Sept. 7, 2004) (unpublished op.).

order to hamper the defense, the reason would strongly support the speedy trial claim.  *See id.* ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government [on a speedy trial claim]." (footnote omitted)).  Delay because of negligence or court overcrowding also supports a speedy trial claim, but is given less weight.  *See id.* ("A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.").  Finally, a missing witness or similar circumstance would constitute a valid reason for the delay.  *See id.*

The OCCA could reasonably have concluded that the reasons for the delay did not weigh heavily either for or against the Petitioner.

For example, some of the continuances were apparently caused by docketing and scheduling conflicts.[6]  Petition at pp. 18-20; Response at pp. 8-9.  For these delays, the reasons could support the habeas claim.  *See United States v. Tranakos*, 911 F.2d 1422, 1428 (10th Cir. 1990) ("The difficulty in finding a judge to handle the case weighs against the government." (citations omitted)); *see also supra* p. 7 (stating that court overcrowding supports a speedy trial claim).

---

[6]      At least two of the continuances are unexplained.  *See* Petition at p. 19; Response to Petition for Writ of Habeas Corpus at p. 8, notes 3 & 4 (July 10, 2007) ("Response").  However, Mr. Tiger has not attributed the delays to a deliberate effort to hinder the defense.  *See* Petition at pp. 18-20.

According to the Respondent, the remaining delays were justified by the complexity of the case.  Response at pp. 9-10.  For example, Mr. Sirmons notes that:

- there were multiple defendants, one of which was Mr. Tiger's brother;

- the case involving the Petitioner's brother was moving at a slower pace;

- there were multiple counts against Mr. Tiger;

- the evidence included over 35 witnesses and 5 crime scenes; and

- the Petitioner had multiple cases pending against him.

*Id.*; *see also* Transcript of Proceedings, Pretrial Hearings at pp. 3-4, 5, 17, 28-34, *State v. Tiger*, Case No. CF-03-69 (Okla. Co. Dist. Ct. Dec. 1, 2004) ("Pretrial Hearing Transcript"). The OCCA could reasonably have concluded that the complexity of the case had justified many of the delays and weighed against habeas relief.[7]

Some of the reasons for delay could have supported the Petitioner's claim, but others could have weighed against habeas relief.  Thus, the state appeals court could reasonably have regarded the reasons for delay as immaterial to the outcome.

---

[7] *See Harris v. Champion*, 15 F.3d 1538, 1562 (10th Cir. 1994) (suggesting that complexity would be a constitutionally sufficient justification for a trial delay); *accord United States v. Bass*, 460 F.3d 830, 838 (6th Cir. 2006) ("When delay is justified by a legitimate reason, such as complexity, a speedy trial claim will fail absent a demonstration of actual prejudice."); *United States v. Rubin*, 609 F.2d 51, 66 (2d Cir. 1979) (holding that the pre-indictment delay was justified by "the complexity of the evidence, the pendency of [other] investigation[s] . . ., and the resulting interviews of many witnesses"), *aff'd*, 449 U.S. 424 (1981).

8

IV.    Whether the Petitioner Asserted His Speedy Trial Rights

Mr. Tiger repeatedly complained about the denial of a speedy trial.  *See* Petition at

p. 20.[8]  Consequently, this factor supports the speedy trial claim.  *See Jackson v. Ray*, 390

F.3d 1254, 1262 (10th Cir. 2004).

V.     Prejudicial Effect of the Delay

The Court must also consider potential prejudice to Mr. Tiger because of the delay.

*See supra* p. 5.  The Petitioner relies on the impediment to his defense from a breakdown in

communications with counsel.  The OCCA could reasonably have rejected this argument.

In deciding whether Mr. Tiger has shown prejudice, the Court should consider the

interests that the right to a speedy trial was designed to protect:

- prevention of oppressive pretrial incarceration,

- minimization of anxiety and concern, and

- prevention of a hindrance to the defense.

*See Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004).

---

[8]    *See* Petition at p. 20; *see also* Petition for Writ of Habeas Corpus Motion to Dismiss at pp. 1-3, *Tiger v. State*, Case Nos. CF-2003-69, CF-2002-2506, CF-2002-2492, CF-2002-2369, CM-2002-2034 (Okla. Co. Dist. Ct. Oct. 30, 2003) (*pro se* motion for dismissal based on the lack of a speedy trial, filed one year before the trial had begun); Application/Petition/Request that the Honorable Judge T. Gray, Be Removed from Sitting Over Petitioner's Case/Trial at pp. 1-6, *Tiger v. State*, Case Nos. CF-03-69, CF-02-2506, CF-02-2492, CF-02-2369, CM-02-2034 (Okla. Co. Dist. Ct. June 24, 2004) (*pro se* motion for recusal of the trial judge based on her alleged failure to proceed to trial within one year of the arrest); Letter to Court, *Tiger v. State*, Case No. CF-03-69 (Okla. Co. Dist. Ct. Oct. signed Sept. 29, 2004) (complaining about the lack of a speedy trial).

According to the Petitioner, the delay resulted in his being represented by three different attorneys. Petition at pp. 20-21. Mr. Tiger complains that the changes "took a toll on the attorney-client relationship" and caused a fundamental breakdown in communication. *Id.* at p. 21. But regardless of the delays, the OCCA could reasonably have placed blame on Mr. Tiger for the breakdown in communication. *See infra* pp. 12-14. *A fortiori*, the OCCA could reasonably have concluded that the delay would not have been prejudicial to Mr. Tiger.

VI.     Balancing of the Factors

The speedy trial claim is supported by the length of the delay, Mr. Tiger's insistence on a speedy trial, and some of the reasons for the delay. But some reasons for the delay also weigh against the Petitioner, and the OCCA could reasonably have rejected the allegation of prejudice.

In these circumstances, denial of habeas relief is necessary under *Jackson v. Ray*, 390 F.3d 1254 (10th Cir. 2004). In *Jackson v. Ray*, the Tenth Circuit Court of Appeals could not say that the OCCA's balancing was contrary to, or an unreasonable application of, Supreme Court precedent. *See Jackson v. Ray*, 390 F.3d at 1267. For Mr. Tiger the delay was less than it was in *Jackson*, the reasons for some of the delays weighed against the speedy trial claim just as they had in *Jackson*, and the petitioner had demanded a speedy trial in both cases. *See id.* at 1261-63. But in *Jackson*, the habeas claim failed because the OCCA could reasonably have concluded that the delay was not prejudicial. The same is true here, and the Court should reject the speedy trial claim in light of *Jackson v. Ray*.

10

## INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
## GROUND TWO

In his second ground for relief, Mr. Tiger alleges that a breakdown in communication had resulted in ineffective assistance of trial counsel.[9]   Petition at pp. 22-27.   According to Mr. Tiger, he did not trust his third attorney and refused to communicate with her.   *Id.* at 23. The OCCA rejected this claim,[10] and the federal district court should reject the related habeas claim.

Ordinarily, to establish ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient and prejudicial.   *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).   In this case, the Petitioner does not identify any specific deficiencies in the legal representation.   Instead, Mr. Tiger relies on a presumption of ineffectiveness from a breakdown in his ability to communicate with the attorney.   This argument is invalid for two reasons:

- The Petitioner lacks Supreme Court precedent for his theory and

- the OCCA's determination constituted a reasonable application of federal law and the factual record.

---

[9]   The Petitioner also argues that the trial court had failed to conduct an adequate inquiry on this issue.   Petition at pp. 24-26.   The OCCA ruled that the trial court had not committed an abuse of discretion when it declined to discharge Mr. Tiger's attorney.   OCCA Opinion on Direct Appeal at p. 4.   The federal district court need not address this issue because Mr. Tiger has not established ineffective assistance of counsel based on the alleged breakdown in communication.   *See infra* pp. 11-14.

[10]   OCCA Opinion on Direct Appeal at p. 4.

First, the OCCA's rejection of the claim was not contrary to, or an unreasonable application of, Supreme Court precedent. *See supra* pp. 2-4. The Tenth Circuit Court of Appeals has held that "'[a] complete breakdown in communication between an attorney and client may give rise to [a presumption of ineffectiveness].'" *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000) (citation omitted). But the Supreme Court has not adopted this view.[11] Instead, the Supreme Court has declined to find a constitutional right to a meaningful relationship between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983) ("we reject the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel" (footnote & citation omitted)). As a result, the existence of published precedent in the Tenth Circuit would not support habeas relief. *See supra* pp. 2-4.

Second, the OCCA's rejection of the Petitioner's theory involved a reasonable application of existing federal law and the factual record.

In determining whether a constitutional violation took place, Tenth Circuit precedent requires the habeas court to determine:

- whether the petitioner had made a timely motion to request new counsel,

- whether the trial court had adequately inquired into the matter,

---

[11]     *See Dindy v. Ward*, Case No. CIV-04-1073-HE, slip op. at 7 (W.D. Okla. Mar. 9, 2005) (unpublished report and recommendation by magistrate judge) ("No clearly-established Supreme Court decision supports Petitioner's claim that she was entitled to substitute appointed counsel because she believed she was unable to communicate with her court-appointed counsel." (citation omitted)), *adopted* (W.D. Okla. Apr. 14, 2005) (unpublished order by district judge).

- whether the conflict between the petitioner and his attorney had resulted in a total lack of communication, and

- whether the petitioner had substantially and unjustifiably contributed to the breakdown in communication.

*See Romero v. Furlong*, 215 F.3d 1107, 1113 (10th Cir. 2000).  Application of the final factor is fatal to Mr. Tiger's claim.

To be entitled to habeas relief, "[the] breakdown in communication . . . cannot be the result of a defendant's unjustifiable reaction to the circumstances of his situation."  *Id.* at 1114.  The OCCA could reasonably have found an unjustifiable decision by Mr. Tiger to decline any communication with his attorney.

For example, Mr. Tiger states that his first two attorneys had neglected to honor his wishes.  Petition at p. 22.  The alleged neglect by these two attorneys led Mr. Tiger to cut off any communication with his next attorney from the outset.  Mr. Tiger explains:  "[B]ecause replacement counsel was from the same office as Petitioner's other two counsel, Petitioner did not trust her and refused to communicate with [the attorney]."  *Id.* at p. 23; *see also id.* at p. 23 (Mr. Tiger's acknowledgment that he had decided not to communicate "by the time [his new attorney] took over the case"); *id.* at p. 10 ("The frequent change in attorneys took its toll . . . to the point where Petitioner refused to meet with, or talk to, [his new attorney].").

The Petitioner also attributes his refusal to communicate to the filing of a federal suit against his attorney before the criminal trial had begun.  *See id.* at 24.  But Mr. Tiger was the one who chose to sue and decline communication with his attorney.  *See supra* pp. 12-13.

Thus, the state courts could reasonably have found that the lack of communication with the third attorney was the "product of [Mr. Tiger's] negative attitude toward the proceedings and not a justifiable reaction to some outside influence or event." *Romero v. Furlong*, 215 F.3d 1107, 1114 (10th Cir. 2000); *see United States v. Rhodes*, 157 Fed. Appx. 84, 88 (10th Cir. Dec. 6, 2005) (unpublished op.) (rejecting an ineffective assistance claim involving a breakdown in communication in part because the defendant had substantially and unjustifiably contributed to the impasse); *accord United States v. Roston*, 986 F.2d 1287, 1292-93 (9th Cir. 1993).[12]

The OCCA could reasonably have concluded that Mr. Tiger had lacked justification to refuse any communication with the third attorney, and he has not otherwise alleged any specific instances of ineffective assistance of counsel. *See* Petition at pp. 22-27. In these circumstances, the OCCA's determination was reasonable, and the federal district court should reject the habeas claim.

---

[12]    In *United States v. Roston*, 986 F.2d 1287 (9th Cir. 1993), the issue was whether the district court had erred in refusing to appoint new counsel on the basis of a total breakdown in communication between the defendant and his attorney. *See Unites States v. Roston*, 986 F.2d at 1292-93. Like Mr. Tiger, the defendant alleged distrust of the new attorney based on mistreatment by the previous attorneys. *See id.* at 1292. Consequently, the defendant simply refused any communication. *See id.* at 1292-93. The Ninth Circuit Court of Appeals found the excuse to be "insufficient," explaining: "[The defendant's] relationships with his previous attorneys had no bearing on his relationship with his current attorney." *Id.* Thus, the appeals court concluded that the district court had not erred in refusing to appoint new counsel. *See id.*

CUMULATIVE ERROR
GROUND THREE

In the third ground for relief, the Petitioner alleges the denial of constitutional rights through "cumulative" errors.  *Id.* at pp. 27-28.  Mr. Tiger is not entitled to federal habeas relief based on cumulative error.

"A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  *Miller v. Mullin*, 354 F.3d 1288, 1301 (10th Cir. 2004) (*per curiam*).  But to count, each error must involve a violation of the federal constitution rather than state law.[13]

Mr. Tiger has not shown any constitutional errors in connection with the current habeas claims.  *See supra* pp. 4-14; *infra* pp. 16-19.  Thus, the Court should decline to award habeas relief based on cumulative error.

---

[13]      *See Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) ("Because we find no single constitutional error, we also must reject Parker's argument that cumulative error resulted."); *Hain v. Gibson*, 287 F.3d 1224, 1244 (10th Cir. 2002) ("Although Hain has asserted a cumulative error argument, it is without merit since he has failed to identify multiple constitutional violations arising at trial." (citation omitted)).

15

EXCESSIVE SENTENCES
GROUND FOUR

Mr. Tiger challenges his sentences on two grounds:

- cruel and unusual punishment and

- *de facto* ineligibility for parole.

Petition at pp. 29-31.  Both claims are invalid.

I.    Cruel and Unusual Punishment

Mr. Tiger alleges that his prison sentences are excessive and "grossly disproportionate."  *Id.* at 29.  The Court should reject the allegation.

For this claim, the Petitioner must show that the sentences were grossly disproportionate to the offense.  *See Hawkins v. Hargett*, 200 F.3d 1279, 1282 (10th Cir. 1999).   The relevant factors include the seriousness of the crimes and the legislative determination of an appropriate range in sentences.  *See id.* at 1284-85.  These factors rarely lead to a finding of gross disproportionality.[14]

The present action involves sentences of:

- 10 years for second degree burglary,

---

[14]    *See Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case."); *see also United States v. Angelos*, 433 F.3d 738, 750 (10th Cir.) ("Although the Supreme Court has reviewed Eighth Amendment challenges to a number of state and federal sentences, it has struck down only two of them over the past century."), *cert. denied*, __ U.S. __, 127 S. Ct. 723 (2006); *United States v. Delacruz-Soto*, 414 F.3d 1158, 1168 (10th Cir. 2005) ("In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." (citation omitted)).

- 350 years for assault and battery with a deadly weapon and with intent to kill,

- 30 years for first degree burglary,

- 20 and 350 years on two counts of pointing a firearm at another,

- 30 years for robbery with a firearm,

- 20 years for attempted burglary in the first degree, and

- 20 years for possession of a firearm after a former felony conviction.

Judgment and Sentence, *State v. Tiger*, Case No. CF-03-69 (Okla. Co. Dist. Ct. Oct. 29, 2004).

While all of the sentences are lengthy, three factors weigh against Mr. Tiger:

- the seriousness of these crimes,[15]

- his prior felony convictions,[16] and

- the statutory availability of a life sentence for each crime.[17]

---

[15]    *See Hawkins v. Hargett*, 200 F.3d 1279, 1283 (10th Cir. 1999) (rejecting a claim that sentences for burglary and robbery with a deadly weapon were disproportionate to the crimes in part becasue they were "serious"); *see also United States v. Angelos*, 433 F.3d 738, 751 (10th Cir.) (discussing the seriousness of combining firearms with other felonies), *cert. denied*, ___ U.S. ___, 127 S. Ct. 723 (2006).

[16]    *See* Transcript of Proceedings at pp. 7-9, *State v. Tiger*, Case No. CF-03-69 (Okla. Co. Dist. Ct. Dec. 1, 2004); *see also* Second Page to Amended Information, *State v. Tiger*, Case No. CF-03-69 (Okla. Co. Dist. Ct. Aug. 20, 2003).

[17]    Because of his prior felony convictions, Mr. Tiger was eligible for life sentences on all of his convictions.  *See* Okla. Stat. tit. 21 § 51.1(B)(1) (2002 supp.) (referring to Okla. Stat. tit. 57 § 571, which covers assault and battery with a deadly weapon, burglary in the first degree, pointing a firearm at another, and robbery); Okla. Stat. tit. 21 § 51.1(C) (2002 supp.) (burglary in the second degree, attempted burglary in the first degree, and possession of a firearm after a felony conviction).

In light of these factors, the OCCA could reasonably have concluded that the sentences were not grossly disproportionate to the offenses.

II.     *De Facto* Ineligibility for Parole

Under Oklahoma law, parole cannot be considered until Mr. Tiger has served at least 85% of his sentence for assault and battery with a deadly weapon and with intent to kill.[18] *See* Okla. Stat. tit. 21 § 12.1 (2001); Okla. Stat. tit. 21 § 13.1 (2002 supp.).  Because 85% of the sentence would fall well beyond his life expectancy, Mr. Tiger alleges that he has effectively been subjected to a term of life imprisonment without the possibility of parole. Petition at pp. 29-30.  This allegation is invalid as a matter of law.

The Tenth Circuit Court of Appeals has stated:

> A sentence of imprisonment for a very long term of years, the effect of which is to deny a prisoner eligibility for parole until a time beyond his life expectancy, does not violate the Eighth Amendment prohibition of imposition of cruel and unusual punishment.

*United States v. O'Driscoll*, 761 F.2d 589, 599 (10th Cir. 1985) (citation omitted).  Thus, if the duration of the sentence is otherwise within constitutional limits, it does not become excessive simply because it must be served in prison rather than through parole.  *See Passman v. Blackburn*, 797 F.2d 1335, 1338, 1350 (5th Cir. 1986) (holding that on a

---

[18]     The Petitioner also believes that he must serve 85% of his 350-year sentence for pointing a firearm at another.  Petition at p. 30 (referring to Count 12).  But pointing a firearm at another is not one of the crimes subject to the 85% requirement.  *See* Okla. Stat. tit. 21 § 13.1 (2002 supp.).

conviction for armed robbery, a sentence of 99 years, without benefit of parole, was proportionate to the crime and did not violate the Eighth Amendment).[19]

As discussed above, the OCCA could reasonably have concluded that the sentences were not grossly disproportionate to Mr. Tiger's crimes. *See supra* pp. 16-18. Thus, the sentences were not excessive in themselves and they did not become too harsh simply because Mr. Tiger had to serve his time in prison rather than on parole. *See Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").

REQUEST FOR AN EVIDENTIARY HEARING, DISCOVERY,<br>AND EXPANSION OF THE RECORD

Mr. Tiger requests an evidentiary hearing, discovery, and expansion of the record. Petition at pp. 31-33. His requests should be denied.

I.    Evidentiary Hearing

The Petitioner has not justified an evidentiary hearing.

Federal law restricts the availability of an evidentiary hearing when a petitioner fails to develop the factual basis of his habeas claim in state court. *See* 28 U.S.C. § 2254(e)(2) (2000). "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable

---

[19]    The *Passman* opinion has been implicitly overruled. *See Saahir v. Collins*, 956 F.2d 115, 119 & n.2 (5th Cir. 1992) (recognizing the implicit overruling of *Passman v. Blackburn*). But the opinion was overruled on grounds unrelated to the parenthetical in the text.

to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Ordinarily, a petitioner will be considered "diligent" only if he had requested "an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437.

If the Petitioner does diligently attempt to develop the factual basis of his claim in state court, an evidentiary hearing would ordinarily be available if proof of the allegations would justify habeas relief. *See Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998) (holding that the petitioner "is entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief" (citation omitted)). But the Court need not conduct an evidentiary hearing "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief . . . ." *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1934, 1940 (2007).

The habeas record does not reflect any effort by Mr. Tiger to request an evidentiary hearing in state court.[20] But Mr. Tiger did supplement the OCCA record to include the federal complaint lodged against his counsel. Notice of Extra-Record Evidence Supporting Propositions I and II of Appellant's Brief-in-Chief at p. 2 & Exh. A, *Tiger v. State*, Case No. F-2004-1127 (Okla. Crim. App. June 15, 2005). Based on this supplementation of the state court record, the federal district court can assume *arguendo* that Mr. Tiger had attempted to

---

[20]    He could have done so in connection with the direct appeal. *See* Rule 3.11(A), Rules of the Oklahoma Court of Criminal Appeals. Nonetheless, the Petitioner did not seek an evidentiary hearing on direct appeal. *See* Original Brief for and on Behalf of Charles Clarence Tiger, Appellant, *passim*, *Tiger v. State*, Case No. F-2004-1127 (Okla. Crim. App. June 16, 2005).

establish the factual foundations of his speedy trial and ineffective assistance claims in the

OCCA.  If the Petitioner had done so, he would be entitled to habeas relief if:

- his factual allegations would entitle him to habeas relief and

- the habeas claims were not belied by the record.

*See supra* p. 20.  Mr. Tiger cannot satisfy this dual burden on his speedy trial and ineffective

assistance claims.

As discussed above, the ineffective assistance claim fails because it is not based on

Supreme Court precedent and the existing record reflects a refusal by Mr. Tiger to

communicate with his eventual trial counsel.  Mr. Tiger has not identified any facts to be

proven in an evidentiary hearing which would overcome these barriers to habeas relief.  *See*

*Anderson v. Attorney General of Kansas*, 425 F.3d 853, 860 (10th Cir. 2005) (upholding the

denial of an evidentiary hearing because the petitioner had not pointed to evidence

supporting his claim).

Similarly, the speedy trial claim must fail because the OCCA could reasonably have

balanced the factors to hold that the Sixth Amendment had not been violated.  *See supra* pp.

4-10.  Again, the Petitioner has failed to identify any facts which would have compelled a

different outcome through the balancing test. *See supra* p. 21.  The absence of any such facts

is fatal to Mr. Tiger's request for an evidentiary hearing on the speedy trial claim.

For the claims involving cumulative error, cruel and unusual punishment, and

ineligibility for parole, Mr. Tiger has not suggested any effort to develop the factual

21

foundations in state court.  *See supra* pp. 19-20.  Thus, for these habeas claims, an evidentiary hearing would be appropriate only if:

> (A)    the claim[s] rel[y] on - -
>
>> (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and,
>
> (B)    the facts underlying the claim[s] would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)-(B) (2000).

Mr. Tiger cannot satisfy any of these requirements on the claims involving cumulative error, cruel and unusual punishment, or ineligibility for parole.  For example, these claims do not involve reliance on:

- a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court or

- a factual predicate previously unknown with the exercise of due diligence.

Similarly, the Petitioner cannot show a likelihood of acquittal in the absence of cumulative error, cruel and unusual punishment, or ineligibility for parole.  *See supra* pp. 15-19.

As a result, Mr. Tiger is not entitled to an evidentiary hearing on any of his claims.

II.    <u>Discovery</u>

The Petitioner requests discovery to facilitate preparation for the evidentiary hearing. Petition at pp. 32-33.  The Court should decline to hold an evidentiary hearing,[21] rendering Mr. Tiger's discovery requests moot.

III.   <u>Expansion of the Record</u>

Finally, Mr. Tiger seeks expansion of the record in order to provide the Court with "any evidence, document, letter, and/or affidavit relevant to this case." *Id.* at p. 33.  But the Petitioner has not identified any such evidence.  Consequently, the Petitioner's request should be denied.

RECOMMENDED RULINGS AND NOTICE OF THE RIGHT TO OBJECT

The Court should deny the requests for discovery, expansion of the record, an evidentiary hearing, and issuance of a writ of habeas corpus.  The Petitioner can object to this report and recommendation.  To do so, Mr. Tiger must file an objection with the Clerk of this Court by November 1, 2007.  *See* W.D. Okla. LCvR 72.1.  The failure to timely object would foreclose appellate review of the suggested rulings.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

STATUS OF THE REFERRAL

The referral to the undersigned is terminated.

---

[21]      *See supra* pp. 19-22.

Entered this 12th day of October, 2007.


Robert E. Bacharach
United States Magistrate Judge